UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| OLIVIA R. ONE HORN,<br><br>                    Plaintiff,<br><br>       vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner, Social Security<br>Administration,<br><br>                    Defendant. | CIV. 14-5024-JLV<br><br>ORDER |

## INTRODUCTION

Plaintiff Olivia One Horn filed a complaint appealing an administrative law judge's ("ALJ") decision denying disability insurance benefits.   (Docket 1). Defendant denies plaintiff is entitled to benefits.   (Docket 6).   The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").   (Docket 8).   The parties filed their JSMF.   (Docket 9).   Within the JSMF the parties also filed their separate statements of disputed facts.   Id.   For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 10) is denied.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 9) is incorporated by reference.[1]   Further recitation of salient facts is incorporated in the discussion section of this order.

---

[1]Because of the unusual set-up of the parties' submission, the court will make specific references to their separate statements of disputed facts which are supported by the administrative record where appropriate.

On January 8, 2011, Ms. One Horn filed applications for disability insurance benefits and supplemental social security income alleging an onset of disability date of April 30, 2010.[2]   Id. ¶ I(1); see also Administrative Record at p. 157 (hereinafter "AR at p. ____").   Those applications were denied and Ms. One Horn did not appeal.   (Docket 9 ¶ I(1)).   On July 15, 2011, Ms. One Horn filed a second set of applications for benefits alleging an onset of disability date of April 30, 2010.   Id. ¶ I(2).   During the administrative hearing, Ms. One Horn amended the onset of disability date to April 1, 2011.   (AR at p. 37).

On April 16, 2013, the ALJ issued a decision finding Ms. One Horn was not disabled.   Id. ¶ I(4); see also AR at pp. 16-29.   On February 12, 2014, the Appeals Council denied Ms. One Horn's request for review.   Id. ¶ I(5); see also AR at pp. 1-3.   The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.   It is from this decision which Ms. One Horn timely appeals.

The issue before the court is whether the ALJ's decision of April 16, 2013, that Ms. One Horn was not "under a disability, as defined in the Social Security Act, from April 1, 2011, through [April 16, 2013]" is supported by the substantial evidence in the record as a whole.   (AR at p. 29); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner

---

[2]20 CFR Part 404 applies to disability insurance benefits and 20 CRF Part 416 is applicable to supplemental social security income benefits.   Because these sections are substantially identical for purposes of the court's analysis, all references will be to 20 CFR Part 404.

of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); <u>Choate v. Barnhart</u>, 457 F.3d 865, 869 (8th Cir. 2006); <u>Howard</u>, 255 F.3d at 580.   The court reviews the Commissioner's decision to determine if an error of law was committed.   <u>Smith v. Sullivan</u>, 982 F.2d 308, 311 (8th Cir. 1992).   "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."   <u>Cox v. Barnhart</u>, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."   <u>Reed v. Barnhart</u>, 399 F.3d 917, 920 (8th Cir. 2005) (quoting <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial

3

evidence.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).   A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "   Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.   See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a)(4).   If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.   Id.   The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).   The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.   (AR at pp. 19-21).

4

**STEP ONE**

At step one, the ALJ determined Ms. One Horn had not been engaged in substantial gainful activity since April 1, 2011, the amended onset date. (Docket 9 ¶ 1; AR at p. 21).   The ALJ noted Ms. One Horn worked for the Wolakota Waldorf Society in the fall of 2012, but this part-time income did "not constitute substantial gainful activity ["SGA"] within the meaning of the regulations."   (AR at p. 21).

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."   20 CFR § 404.1520(a)(4)(ii).   "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).   A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.   20 CFR § 404.1521.   An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   Kirby, 500 F.3d at 707.   "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."   Id. (citation omitted).   Additionally, the impairment must have lasted at least twelve months or be expected to result in death.   See 20 CFR § 404.1509.

The ALJ identified Ms. One Horn suffered from the following severe impairments: "osteoarthritis, degenerative disc disease L5-S1, diabetes mellitus type II with neuropathy, and obesity."   (Docket 9 at p. 9 ¶ 3; AR at p. 21).   Ms. One Horn did not allege obesity as one of her disabling impairments.   (AR at

5

p. 21).   The ALJ concluded under the regulations that she qualified for such a finding: "[G]iven the claimant's osteoarthritis, including involvement in the knees, the undersigned finds [her] obesity would impose more than a minimal effect on [her] ability to perform basic work activities, and thus is considered 'severe' within the meaning of the Social Security Act and regulations."   Id.

The ALJ examined Ms. One Horn's vision and gastroesophageal reflex disease disability claims.   The ALJ concluded these conditions were only "slight abnormalit[ies]" and when "considered singly and in combination, and would have no more than a minimal effect on [her] ability to work, and such is therefore considered 'nonsevere' within the meaning of the Social Security Act and regulations."   Id. at p. 22.

Ms. One Horn challenges the ALJ's conclusions and alleges she has the following additional severe impairments: (1) "sublaxation of patella and degenerative arthritis of right knee . . . ." (Docket 9 at p. 21 ¶ 1); (2) "degenerative disk disease L5-S1 level with vacuum disk phenomenon . . . ."   Id. ¶ 2; and (3) "presbyopia . . . ."   Id. ¶ 3.   Each of these challenges to the ALJ's findings will be separately addressed.

     (1)    SUBLAXATION OF PATELLA AND DEGENERATIVE
                 ARTHRITIS OF RIGHT KNEE

An x-ray taken on April 30, 2009, revealed "[p]osterior and lateral spurring.   Patella slightly lateral but in notch . . . . Sublaxation patella and degenerative arthritis.   [R]ight knee."   (AR at p. 395).   A subsequent x-ray of Ms. One Horn's right knee taken on September 28, 2012, showed:

> The bones are slightly demineralized. There is minimal medial joint space narrowing with osteophytosis on both sides of the joint. Laterally, there has been a significantly depressed fracture of the tibial plateau with relative sparing of the tibial margin. There is osteophytosis about the tibial margin, and about the anterior tibial spine as well as about the anterior superior and posterior femoral condyles. There is osteophytosis about the posterior tibial margin. There is a moderate amount of fluid in the knee joint and . . . there is swelling of the prepatellar bursa.

(AR at p. 589). The radiologist's conclusions were "[d]egenerative change on both sides of the joint and old central compression of the lateral tibial table[.] Joint fluid and swelling of the prepatellar bursa which may be related to the degenerative changes." Id.

The ALJ's analysis of this issue recognized that Ms. One Horn "alleges disability due to 'diabetes, arthritis in both knees.'" (AR at p. 21) (referencing AR at p. 259). The ALJ considered Ms. One Horn's "osteoarthritis, including involvement in the knees" when determining her obesity was a severe impairment. Id.

The ALJ noted that following a medical records review on December 16, 2011, Dr. Whittle stated Ms. One Horn's physical capabilities for lift and carry were somewhat limited "due to degenerative arthritis of the hands and knees, right greater than left . . . ." (AR at p. 27). While Dr. Whittle's report does not specifically reference the 2009 x-ray, his report does note the following medical record entries:

> 3/15/11 [Dr. Haas] c/o knee pains noting clmt. [R]eported prior injection in right knee. . . .

7

6/23/11 . . . Dr. Livermont notes . . . lots of joint pain. . . . DX of . . . chronic right knee pain. . . .

4/14/11 right sided knee pain getting worse.  Clmt. reports can't get up when sits down on toilet.  PE notes positive McMurray's.  Dx of right knee degeneration.

1/12/11 . . . [p]ain in right knee.  PE notes strength 5/5 and gait normal.  SLR normal but pain to some bending.

5/24/10 XR of right knee notes moderate degenerative osteoarthritis and soft tissue mass in posterior fossa compatible with Baker's cyst. . . .

2/14/11 . . . Dr. Cynthia Weaver notes eval for pain in right knee . . . . can completely extend both knees but has some limited ROM in flexion over the right knee; crepitus present over knees bilaterally; appears to have Baker's cyst behind right knee with effusion present; 1+ peripheral edema present; some tenderness to squeeze across MTPs; DTRs are 1 at knees . . . Dx of osteoarthritis . . . . Walks with somewhat antalgic gait so recommended a cane for long distances.  Injected right knee.

(AR at pp. 65-66).   As part of his impairment diagnosis, Dr. Whittle noted "Dysfunction-Major Joints . . . Severe . . . ."  Id. at p. 66.   When setting his recommendation for residual functional capacity ("RFC"), Dr. Whittle concluded Ms. One Horn had "exertional limitations . . . . due to degenerative arthritis of the hands and knees R > L."  Id. at p. 68.

The ALJ found that the other medical records review physician, Dr. Erickson, made the same observation that Ms. One Horn's physical capabilities for lift and carry were somewhat limited "due to degenerative arthritis of the hands and knees, right greater than left . . . ."  Id. at p. 28.   Dr. Erickson's report is dated March 6, 2012.   Id. at p. 90.   Dr. Erickson's report does not

8

reference the 2009 x-ray.   His medical records references concerning Ms. One Horn's knee pain are the same as Dr. Whittle's notations.   Id. at pp. 74-75.   As part of his impairment diagnosis, Dr. Erickson noted "Osteoarthrosis and Allied Disorders . . . Severe . . . ."   Id. at p. 86.   When setting his recommendation for RFC, Dr. Erickson concluded Ms. One Horn had "exertional limitations . . . due to degenerative arthritis of the hands and knees R > L."   Id. at p. 87.

Ms. One Horn's memoranda in support of the motion to reverse the decision of the ALJ do not address the proposed additional severe impairment associated with her right knee.   See Dockets 11 & 14.   "Claims not raised in an opening brief are deemed waived."   Jenkins v. Winters, 540 F.3d 742, 751 (8th Cir. 2008).   See also Mississippi River Corp. v. FTC, 454 F.2d 1083, 1093 (8th Cir. 1972) ("Proper judicial administration" requires that appellant raise issues in opening brief).

Notwithstanding waiver of the issue, the court finds the ALJ properly considered the evidence and concluded Ms. One Horn suffered a severe impairment of "osteoarthritis."   (AR at p. 21).   This finding is consistent with the reports of Ms. One Horn's treating physicians as well as the reviewing physicians.   Throughout the analysis of Ms. One Horn's osteoarthritis, the ALJ frequently noted this condition impacted her knees.   The ALJ did not error by not including a separate, specific severe impairment of Ms. One Horn's right knee.   The challenge to the ALJ's decision on this ground is overruled.

    (2)    DEGENERATIVE DISK DISEASE L5-S1 LEVEL WITH
              VACUUM DISK PHENOMENON

The ALJ acknowledged an x-ray shows "degenerative disk disease L5-S1 level with vacuum disk phenomenon." (Docket 9 at p. 6 ¶ 21. The x-ray which is the focus of Ms. One Horn's challenge was taken on October 30, 2009. (AR at p. 390). The report noted a "decrease in height of the L5-S1 disk space with a vacuum disk phenomenon at this level, indicating degenerative disk disease." Id. Based on the record the ALJ found Ms. One Horn suffered a severe impairment of "degenerative disc disease L5-S1 . . . ." Id. at p. 21.

Ms. One Horn's memoranda do not mention that the proposed additional severe impairment is changed by adding the phrase "with vacuum disk phenomenon." See Dockets 11 & 14. This claim is deemed waived. Jenkins, 540 F.3d at 751. The challenge to the ALJ's decision on this ground is overruled.

    (3)    PRESBYOPIA

"Presbyopia" is defined as "hyperopia and impairment of vision due to advancing years or to old age; it is dependent on diminution of the power of accommodation from loss of elasticity of the crystalline lens, causing the near point of distinct vision to be removed farther from the eye." (Docket 9 at p. 8 ¶ 33). This physical condition causes an individual to "lose[] [the] ability to focus, making it difficult to see objects up close." Id. at p. 21 ¶ 3. "There is no cure for presbyopia, but it can be corrected with glasses or contact lenses. In some cases, adding bifocals to an existing lens prescription is enough. As the

ability to focus up close worsens, the bifocal prescription needs to be strengthened. . . . People who do not need glasses for distance vision may only need . . . reading glasses. . . . If it is not corrected, vision difficulty that gets worse over time can cause problems with driving, lifestyle, or work."   (AR at p. 355).

Ms. One Horn's memoranda do not address why presbyopia should be classified as a severe impairment.   See Dockets 11 & 14.   This claim is deemed waived.   Jenkins, 540 F.3d at 751.

The court notes, however, that presbyopia can be controlled by the use of reading glasses and eventually a prescription.   (AR at p. 355).   "If an impairment can be controlled by treatment or medication, it cannot be considered disabling.' "   Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)).   The challenge to the ALJ's decision on this ground is overruled.

**STEP THREE**

At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526.   If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.

At step three, the ALJ found Ms. One Horn did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in Appendix 1.   (AR at p. 22).   Ms. One Horn does not challenge this finding.   (Docket 9 at p 4 ¶ 14).

## **STEP FOUR**

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's RFC.   20 CFR §§ 404.1520(a)(4)(iv) & 404.1545.   RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from her impairments.   20 CFR 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.   20 CFR §§ 404.1545(e).   All of the relevant medical and non-medical evidence in the record must be considered. 20 CFR § 404.1513.

In determining a claimant's RFC, the ALJ considers any medical opinions and claimant's degree of functional limitation.   20 CFR §§ 404.1545(a)(1) and (4).   "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, and prognosis, and what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions."   20 CFR § 404.1527(b). In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations.   20 CFR § 404.1527(c).

12

The next step in the analysis of mental impairments requires a determination as to the "degree of functional limitation resulting from the impairment(s)."   20 CFR § 404.1520a(b)(2).   Rating of functional limitation evaluates the extent to which impairment "interferes with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 CFR § 404.1520a(c)(2).

The ALJ concluded Ms. One Horn's RFC permitted her "to perform light work[3]. . . except stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, occasionally climb ramps, stairs, ladders, ropes and scaffolds, occasionally stoop, kneel, crouch and crawl, and frequently finger bilaterally."   (AR at p. 24).

To arrive at this RFC the ALJ made a credibility determination of Ms. One Horn's submissions and testimony.   The ALJ discussed Ms. One Horn's allegation that "she is unable to work due to pain symptoms . . . ."   (AR at p. 24). In analyzing her complaints "the law is clear that 'disability' requires more· than the mere inability to work without pain.   To be disabling, pain must be so

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR § 404.1567(b)

severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Id. (referencing 20 CFR §§ 404.1529 and 416.929 and SSR 96-7p).   The ALJ concluded: "While the claimant may experience pain symptoms, the important question is the severity of the pain, and after considering the claimant's statements, the medical history provided from treating and examining doctors and viewing the objective medical evidence in the most favorable light to the claimant, it is concluded that the claimant is not as restricted as she alleges; and . . . claimant's complaints of severe, disabling pain is not fully credible, with a complete review of the evidence does not lead to a conclusion that the claimant is totally disabled and unable to sustain any work activity." Id.

The ALJ next analyzed Ms. One Horn's allegation that "she is disabled and unable to work due to 'diabetes, arthritis in both knees . . . .' " Id. (citation to administrative record omitted).   From Ms. One Horn's completion of a function report of July 25, 2011, the ALJ noted "she can lift about 20 pounds but 'can't bend knees so can't squat, bend, strand, kneel, walk or climb stairs, have to sit to complete tasks, even washing dishes I have to sit in front of sink.' " Id. (referencing AR at p. 280).

The ALJ contrasted this statement with Ms. One Horn's testimony at the administrative hearing that "she 'can't sit for very long,' but state[s] she could sit for 20 to 30 minutes at one time . . . [and] essentially proposed that she could do a restricted range of sedentary work, with very limited walking and standing, and

she fails to include any complaint or limitation regarding these new complaints at the hearing, including no limitation in sitting." Id. at p. 25. Against this testimony the ALJ observed "objective clinical findings do not support any suggestion of an inability to sit for any significant amount of time, nor does the claimant's own reported activities of daily living, which includes the claimant reporting that she specifically does not have any difficulty with sitting, and that she sits most of the day, this despite her testimony at the hearing now that she spends her day 'lying down watching television,' but yet stated that at her way to the hearing she rode for 120 miles before needing to get out of the car." Id.

The ALJ also concluded Ms. One Horn "described fairly normal daily activities. . . . [S]he attends to her own personal needs and hygiene, as well as caring for her two grandchildren, which can be quite demanding both physically and emotionally, without any particular assistance. The claimant prepares 'full meals' daily, performs household chores such as 'some cleaning and laundry,' goes grocery shopping as well as clothes shopping and goes to visit family and friends once or twice a week, and for enjoyment she watches television and sews—this despite her allegations of having difficulty fingering—and further still, in her "information about abilities,' the claimant denies any difficulty using her hands." Id. (referencing AR at pp. 275-82).

The ALJ also contrasted Ms. One Horn's testimony "that she could only walk '10 feet,' . . . [with her] ability to walk from her chair to the hearing room door, which the claimant demonstrated that she walked even further, but in her

15

function report the claimant relayed she would walk about 30 yards, or thus 90 feet, at one time, a distance significantly greater than what [she] is alleging at the hearing.   Further still, medical records relay the claimant reported that she engaged in regular exercise, which included 'walking for 30 minutes at least twice weekly, sometimes 3 times', . . . and that she had been doing this for 2 months."   Id. (referencing AR at pp. 567-601).   The ALJ concluded "the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable, and furthermore appears indicative of [her] testimony at the hearing, which appears to contain exaggeration, particularly given [her] report that she has no difficulty with concentration, persistence or pace due to any pain symptoms, which she reports she does 'very well.' "   Id. (referencing AR at pp. 275-82).

The ALJ compared Ms. One Horn's disability onset date of April 1, 2011, with the fact that she was working "as 'postmaster relief' from August 10, 2010, until April 12, 2011."   Id.   In that capacity, she reported "she would stand/walk 8 hour[s] a day, with 4 hours of kneeling and crouching."   Id.   Once she quit that job, Ms. One Horn applied for South Dakota "unemployment benefits for the 2nd quarter of 2011."   Id. at p. 26 (referencing AR at pp. 192-94).   While the ALJ recognized the application for unemployment benefits "does not constitute a finding of 'not disabled,' " this information impacted on Ms. One Horn's credibility because "[u]nder South Dakota state law, an unemployed individual is

eligible to receive benefits if, *inter alia*, that person registers for work, is able to work and is available to work."   Id. (referencing SDCL § 61-6-2).

The ALJ noted Ms. One Horn "ha[d] no medical treatment records around [April 1 to April 12, 2011] which would suggest she presented to any medical provider to report [a disabling] life-altering event having occurred."   Id.   After reviewing her medical records for the first part of 2011, the ALJ considered Ms. One Horn's records immediately following her alleged onset of disability date of April 1, 2011.   On April 14, Ms. One Horn was "complaining that her knee was getting progressively worse, but with no indication that she told her physician that such had suddenly cause[d] her to be 'disabled' and unable to work just prior to this time.   Exam found positive McMurray's test, and treatment included a trial of 'some pain management as Piroxicam' . . . ."   Id. (referencing AR at pp. 475-76).   The ALJ observed Ms. One Horn did "not report symptoms so severe that such 'disabled' her in April, or that she was unable to comply with these doctor recommendations."   Id.

During a May 5 follow-up to the clinic, the ALJ noted Ms. One Horn "report[ed] her medication regime 'is controlling her knee pain very well.' "   Id. (referencing AR at p. 477).   In August 2011, the ALJ found the medical record reflects "she was 'trying to get disability' for knee pain . . . [her] diabetes was found to be improved, and . . . [she] 'does engage in regular physical activity.' "   Id. (referencing AR at pp. 486-87).

The next medical record the ALJ felt was relevant to Ms. One Horn's credibility is from January 2012. Id. Ms. One Horn "complained of knee pain and wanted an injection, but this was refused as [she] needed to get her blood sugars in control first, and [she] was instructed in physical therapy exercises, 'and also with her cane, which she is not using.' " Id. (referencing AR at p. 521). The ALJ noted Ms. One Horn returned to the clinic "in March with a complaint of back pain, and she does not return again until June, wherein she was assessed with a back 'strain' noting the complaint of back pain had just started the day before." Id. (referencing AR at pp. 543-46). During a June 14, 2011, clinic visit for prescription refill, the ALJ noted Ms. One Horn " 'does not engage in regular physical activity,' and she was advised to do so . . . ." Id. (referencing AR at pp. 570-75).

The ALJ noted that by an October clinic visit Ms. One Horn said "she engaged in regular exercise, which included 'walking 30 minutes at least twice weekly, sometimes 3 times." Id. at pp. 26-27 (referencing AR at p. 591). The clinic note indicated she was complaining of knee pain and the assessment was "right knee osteoarthritis moderately severe." Id. at p. 27 (referencing AR at p. 591). The ALJ observed this clinic visit was during the same time period when Ms. One Horn was "working part-time as a teacher's aide . . . ." Id. at p. 27.

In a December 2011 clinic visit, the ALJ noted Ms. One Horn was "very noncompliant, last picked up meds in October, she is using her insulin sporadically, self-monitoring of blood glucose, frequency of monitoring hardly

ever, nutritional assessment: noncompliant, is not engaging in regular physical activity." Id. (internal quotation marks omitted).

The last medical records the ALJ considered were in 2013.   In February he noted Ms. One Horn was excused from work at a day care because of an upper respiratory infection.   Id. (referencing AR at p. 600).   The ALJ observed that in March 2013 Ms. One Horn's prescriptions had been filed, but it took her five days to go to the clinic to get them.   Id. (referencing AR at p. 601 [ALJ mistakenly referenced p. 594]).

In the final analysis of Ms. One Horn's credibility, the ALJ concluded:

[Ms. One Horn] has not generally received the type of medical treatment one would expect for a totally disabled individual, with relatively infrequent trips to the doctor for the allegedly disabling symptoms for treatment that has been essentially routine and/or conservative in nature, with the record further reflecting significant gaps in the claimant's history of treatment, as well as the claimant failing to follow-up on recommendations made by the treating doctor, which suggests that her symptoms may not have been as serious as she has alleged in connection with this application and appeal.

Id.

Ms. One Horn objects to the ALJ's credibility determination asserting the opinion "is inconsistent with the medical evidence."   (Docket 11 at p. 15).   She makes the argument on several grounds, each of which will be analyzed.

First, she objects to the ALJ's conclusion that the "objective clinical findings do not support any suggestion of an inability to sit for any significant amount of time."   Id. (referencing AR at p. 25).   Ms. One Horn submits "[i]t

seems obvious that severe degenerative disc disease at L5-S1 could interfere with a person's ability to sit."   Id.

At the hearing Ms. One Horn testified she was able to sit for about twenty to thirty minutes at a time.   She then proposed that she retained the ability to do "a restricted range of sedentary work, with very limited walking and standing," but included "no limitation in sitting."   (AR at p. 25).

The Social Security regulations define "sedentary work" as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR § 404.1567(a).   Ms. One Horn has not explained how her ability to perform sedentary work is different from the parameters established by § 404.1567(a), or how the ALJ misinterpreted either the record or her testimony.

Ms. One Horn challenges the ALJ's statement that she "rode for 120 miles before needing to get out of the car" to attend the administrative hearing. (Docket 11 at p. 16) (referencing AR at p. 45).   Ms. One Horn lives in Kyle, South Dakota, which is 83.2 miles from Rapid City, South Dakota, where the administrative hearing was held.   (Docket 9 at ¶ 22).   She testified that while traveling to Rapid City to attend the hearing she had to stop and get out of the car

at Scenic, South Dakota.   Id. ¶ 23.   The Commissioner acknowledges the ALJ misstated the record.   (Docket 12 at p. 16).

The court finds the ALJ's recital of this portion of the record is mistaken. While the court must consider whether this mistake ultimately impacts the credibility analysis, that determination cannot be made based only on one part of the ALJ's evaluation of credibility.   Guilliams, 393 F.3d at 801 (The court is not permitted to reverse the decision of the Commissioner if that decision is supported by good reason and is based on substantial evidence.).

Ms. One Horn challenges the ALJ's credibility determination because he overestimated the level of physical exertion she might have expended in caring for her grandchildren.   (Docket 11 at p. 16).   Ms. One Horn's boyfriend submitted a function report.   (AR at pp. 238-45).   He said the grandchildren were nine and ten years old and that Ms. One Horn cooks for them, washes their clothing and gets the children ready for school.   Id. at p. 239.   He also indicated they went on family outings together and that she does household chores for one to two hours a day, three or four days a week.   Id. at p. 240.   It is reasonable for the ALJ to infer that these pre-teen grandchildren require more physical care and attention than older grandchildren.   Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008).

Ms. One Horn argues the ALJ improperly incorporated his own observations about her ability to walk during the administrative hearing into his

21

credibility analysis.   (Docket 11 at p. 17).   She contends the ALJ's observation is not part of the record.   Id.

During the April 2013 hearing, Ms. One Horn testified she could only walk ten feet.   (AR at p. 40).   She acknowledged she walked from her car across the parking lot and took the elevator to get to the room where the hearing was held. Id. at p. 41.   She also testified that in the fall of 2012, approximately eighteen months after her onset of disability date, she was walking thirty minutes at least two and sometimes three times a week.   Id. at p. 48.   She had been walking for about two months, but quit because her knee pain was getting worse.   Id. at pp. 48-49.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the court[]."   Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).   The ALJ's observation that Ms. One Horn demonstrated her "ability to walk" further than ten feet is supported by the record.   (AR at p. 25).

Ms. One Horn objects to the ALJ's conclusion that the treatment she received was not what one would ordinarily expect to see for a person claiming to be disabled.   (Docket 11 at p. 18).   The ALJ's examination of Ms. One Horn's medical history, set out in detail above, is supported by the record.   An ALJ is entitled to use common knowledge and experience as part of an analysis of treatment received by a claimant.   The ALJ is not expressing a medical opinion, but rather, stating an observation from his vantage point.   No physician indicated Ms. One Horn was so impaired that it was necessary to restrict her

physical activities.   To the contrary, Ms. One Horn was encouraged to engage in physical activity and use a cane as an assisting device while walking.   These are not the types of medical records one would expect to see for an impaired individual who was seeking a disability ruling under the Social Security regulations.   The ALJ adequately explained the record inconsistencies to support his conclusion.   Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002).

Ms. One Horn argues "[t]he ALJ took facts out of context and ignored related facts."   (Docket 11 at p. 19).   Specifically, she contends he failed to acknowledge her knee pain when discussing her walking activities and he unfairly criticized her for being non-complaint with her physician's recommendations when those recommendations caused pain.   Id.

The ALJ connected Ms. One Horn's pain and moderately severe osteoarthritis with his consideration of her ability to walk thirty minutes a day. (AR at p. 27).   Similarly, the ALJ noted Piroxicam was providing some relief in controlling her knee pain.   Id. at p. 26.   This analysis is neither unfair nor inappropriate based on the record.

Finally, Ms. One Horn objects to the ALJ's consideration of her part-time employment after the date of the alleged onset of disability.   (Docket 11 at p. 20). She argues the ALJ improperly used a non-SGA in judging her credibility. While a non-SGA may not be used to deny a disability claim, it is proper for an ALJ to consider whether the activities performed in that activity are consistent with Ms. One Horn's testimony about the limitations her physical impairments

23

impose.   The ALJ properly considered the fact that Ms. One Horn received unemployment benefits in 2011, after the date of her alleged onset of disability. Applying for unemployment compensation adversely affects credibility. Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991).   "[B]y applying for unemployment compensation benefits . . . an applicant must hold [herself] out as available, willing and able to work."   Id.   "Because [her] application necessarily indicates that [she] was able to work, this may be some evidence, although not conclusive, to negate [her] claim that she was disabled prior to [April 1, 2011]. Id.

   "The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard."   Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984)).   "Where adequately explained and supported, credibility findings are for the ALJ to make."   Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).   The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."   Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted).   The court will not disturb the decision of an ALJ who seriously considers but for good reason expressly discredits a claimant's subjective complaints.   See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999). Ms. One Horn's objections to the ALJ's credibility determination are overruled.

Ms. One Horn objects to the ALJ's RFC finding.   (Docket 11 at p. 9).   She argues the ALJ specifically found that she was unable to engage in "frequent fingering bilaterally."   Id. (referencing AR at p. 24).   Ms. One Horn misinterprets the ALJ's conclusion.

The ALJ's explanation of RFC breaks out as follows:

[Ms. One Horn can] perform light work . . . except stand and/or walk . . . for a total of about 4 hours in an 8-hour workday, [she can] sit . . . for a total of about 6 hours in an 8-hour workday, [she can] occasionally climb ramps, stairs, ladders, ropes and scaffolds, [she can] occasionally stoop, kneel, crouch and crawl, and [she can] frequently finger bilaterally.

(AR at p. 24).   This finding is consistent with both Dr. Whittle's and Dr. Erickson's conclusions that they rated her "fingering (fine manipulative)" as "limited [b]oth [hands] . . . [l]imited to 'frequently' due to some DJD [degenerative joint disease] in the 1st CMC joints of the hands."   (AR at pp.   68-69 & 88). The ALJ adopted this language in the decision.   (AR at pp. 27-28).   Ms. One Horn's objection on this ground is overruled.

Ms. One Horn objects to the ALJ's use of the testimony of Drs. Whittle and Erickson and argues their opinions pre-date the September 28, 2012, x-ray discussed above.   Id. at p. 11.

Both Dr. Whittle and Dr. Erickson noted Ms. One Horn's right knee degenerative arthritis.   On December 16, 2011, Dr. Whittle charted her "degenerative arthritis of the . . . knees R > L (right greater than left)."   (AR at p. 68).   Dr. Erickson made the same observation and finding.   (AR at p. 87)

25

The April 30, 2009, x-ray reported "[s]ubluxation patella and degenerative arthritis" of Ms. One Horn's right knee.   (AR at p. 395).   The radiologist's impression of the September 28, 2012, x-ray was "[d]egenerative change on both sides of the joint and old central compression of the lateral tibial table[.]   Joint fluid and swelling of the prepatellar bursa which may be related to the degenerative changes."   (AR at p. 589).

Ms. One Horn fails to explain how the 2012 x-ray is significantly different from the findings based on the 2009 x-ray.   Both identify degenerative arthritis of the right knee, a conclusion the physicians adopted in their reports.   The court finds the 2012 x-ray is a reconfirmation of the earlier x-ray and does not constitute additional substantive evidence.   Ms. One Horn's objection on this basis is overruled.

Ms. One Horn's step four objections are overruled.

**STEP FIVE**

At step five, the ALJ determines whether the claimant is able to do any other work considering her RFC, age, education, and work experience.   If the claimant is able to do other work, she is not disabled.   If the claimant is not able to do other work and meets the duration requirement, she is disabled.   20 CFR § 404.1520(a)(4)(v).   At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.   Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001).

At step five the ALJ found that Ms. One Horn had "past relevant work as a radio dispatcher . . . a semiskilled . . . sedentary exertional level occupation that was also performed at a sedentary exertional level as described by the claimant, which requires frequent reaching, handling and fingering; case aide . . . a semiskilled . . . light exertional level occupation that was also performed at a light exertional level as described by the claimant, which requires occasional reaching, handling and fingering; and postal clerk . . . a semiskilled . . . light exertional level occupation that was also performed at a light exertional level as described by the claimant, which requires frequently reaching, handling and fingering."   (AR at p. 28) (emphasis added).   Based on this finding, the ALJ concluded Ms. One Horn "could perform her past relevant work as a radio dispatcher as previously performed and as generally performed in the national economy."  Id.   With these findings the AJL concluded Ms. One Horn was not disabled under the regulations.   Id. at p. 29.

Ms. One Horn objects to the ALJ's finding of no disability, arguing the substantial evidence in the record does not support the decision.   (Docket 11 at p. 13).   It is not the court's role of the court to re-weigh the evidence and, even if the court would decide the case differently, it cannot reverse the ALJ's decision if the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801.   Without restating the analysis of the record above, the court finds that the ALJ's decision in this case is based on substantial

evidence and is supported by good reason.   Id.   Ms. One Horn's objection to step five is overruled.

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 10) is denied.

IT IS FURTHER ORDERED that the decision of the Commissioner dated April 16, 2013, is affirmed.

Dated September 28, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE